UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-cv-60844-GAYLES

**GEORGINA CID,**
            **Plaintiff,**

    v.

**THE CITY OF MIRAMAR,**
            **Defendant.**
_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendant City of Miramar's Motion to Dismiss [ECF No. 11]. The Plaintiff, Georgina Cid, brings this action against the City of Miramar ("the City"), her former employer, ostensibly alleging discrimination and retaliation. The Court has carefully considered the Complaint, the briefs of counsel, and the applicable law, and is otherwise fully advised in the premises. For the reasons that follow, the motion to dismiss shall be granted.

**I.   BACKGROUND**

Georgina Cid is a white female Cuban American with a Bachelor's degree. Compl. ¶¶ 18, 22. According to the allegations in the Complaint, on September 8, 2014, the City of Miramar hired Cid as a temporary employee. *Id.* ¶ 17. On November 19, 2014, Cid was reclassified as "Executive Administrative Assistant" to the City Manager and officially became a City employee. *Id.* Cid was the only white Cuban American employee in the City Manager's office, which was primarily staffed by African American individuals. *Id.* ¶ 18. At that time, Allyson Love, an African American woman, was a Deputy City Manager. *Id.* ¶¶ 23, 25.

Beginning in January 2015, Cid received complaints about her organization of the offices. *Id.* ¶ 20. On or about April 13, 2015, the City demoted Cid and hired Julie Richards, an African

American woman, as Executive Administrative Assistant. *Id.* ¶¶ 21, 25. Richards did not have a Bachelor's degree—one of the City's minimum qualifications for the position. *Id.* ¶ 22. Cid alleges that Richards was formerly Love's assistant when Love worked for the City of Homestead. *Id.* ¶ 24. Cid believes Richards was the individual who initiated the complaints against her in January 2015. *Id.* ¶ 26.

Following her demotion, then–Chief Operations Officer (now Assistant City Manager) J. Michael Moore harassed and demeaned her. *Id.* ¶ 27. Cid was the only employee in her department required to ask permission to go to lunch. *Id.* ¶ 28. Cid was also relegated to doing menial tasks including cleaning, which led to a visit to Urgent Care for the treatment of bronchitis. *Id.* Moore would ask Cid to destroy files that were copies of already copied files and then ask Cid to retrieve those same files from the garbage. *Id.* ¶ 29. Cid would also be asked to plan birthday parties, then later scrutinized for monies spent. *Id.* ¶ 45.

Cid alleges that Vernon Hargray, who replaced Moore as Chief Operations Officer when Moore was promoted, also singled her out. *Id.* ¶ 30. Hargray, an African American man, would refuse to speak to Cid directly and would instead give instructions to another executive assistant, Regina Roberts, who is also African American, who would then relay Hargray's instructions to Cid. *Id.* ¶¶ 31-32. Hargray would also tell Cid that she "will be going on a long vacation." *Id.* ¶ 44.

Approximately one month after her demotion, Cid complained about her treatment to Human Resources Director Sam Hines, an African American male. *Id.* ¶¶ 34, 37. Hines made no written report of Cid's complaints of discrimination and harassment. *Id.* ¶ 35. Hines instructed Cid to meet with both of her immediate supervisors and "request clear and concise instructions as to what was expected of her." *Id.* ¶ 36. Following these instructions, Cid arranged a meeting with her supervisors, but both supervisors cancelled, stating that such a meeting was unnecessary. *Id.*

Cid alleges she was retaliated against for engaging in protected activity following her

2

complaint to Human Resources. *Id.* ¶ 38. Cid met a gentleman (unnamed in the Complaint) who worked for the law firm that acts as the attorney for the City. *Id.* ¶ 39. Cid disclosed to the City Manager, Kathleen Woods, that the attorney asked her out on a date; Woods advised Cid that the relationship "had her blessing." *Id.* Around this same time, Cid became friends with another City employee, Tricia Spencer. *Id.* ¶ 40. Spencer had filed a charge of discrimination with the EEOC. *Id.* Both Moore and Hargray observed Cid having lunch with Spencer on multiple occasions. *Id.* ¶ 41. Cid was open about her friendship with Spencer. *Id.* ¶ 43.

On September 24, 2015, Cid asked for permission to attend a two-day seminar on writing grants. *Id.* ¶ 46. She was eventually given permission to attend the second day only. *Id.* That second day of the seminar concluded at 4:00 p.m., so Cid discussed with the other attendees whether it was customary to go home after seminars or to return to the office. *Id.* ¶ 47. The other employees told Cid it was customary to go home. *Id.* The next morning, Moore showed Cid a surveillance tape of her leaving the seminar at 4:00 p.m. *Id.* ¶ 48. Cid's employment with the City was terminated on September 30, 2015. *Id.* ¶ 49. Around the same time, Cid's gentleman friend received a warning that he would suffer negative consequences as a result of his relationship with Cid. *Id.* ¶ 50. A month later, the man resigned from his position at the law firm after working for the firm for 17 years. *Id.* ¶ 51.

On November 25, 2015, Cid filed a discrimination charge against the City with the EEOC. *Id.* ¶ 13. The EEOC issued a right-to-sue letter on January 19, 2016. *Id.* ¶ 14. Cid then filed this action against the City on April 17, 2016, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Civil Rights Act of 1991, 42 U.S.C. § 1981; and the Florida Civil Rights Act, Fla. Stat. § 760.01 *et seq.* ("FCRA"). The City has moved to dismiss all claims against it.

## II. LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). "[T]he pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff, *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). At bottom, the question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

## III. DISCUSSION

### A. *Shotgun Pleading*

The Court need not even reach the substance of Cid's claims. A district court has the *sua sponte* obligation to identify and dismiss a "shotgun" complaint. *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126-27 (11th Cir. 2014); *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979 n.54 (11th Cir. 2008), *abrogated on other grounds by Iqbal*, 556 U.S. 662. Recently, the Eleventh Circuit outlined four types of these pleadings, all of which require amendment because they fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). One type of shotgun pleading "is a complaint . . . replete with conclusory, vague, and

immaterial facts not obviously connected to any particular cause of action," and another "is one that commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* at 1321-23 (footnotes omitted). The Eleventh Circuit has also interpreted Federal Rule of Civil Procedure 10(b) to require separate counts for separate claims. *Anderson v. Dist. Bd. of Trs.*, 77 F.3d 364, 366 (11th Cir. 1996); *see also Titus v. Miami Dade Cnty. Water & Sewer Dep't*, No. 15-22316, 2016 WL 3544494, at *2 (S.D. Fla. June 29, 2016).

Cid's Complaint falls into both of the shotgun pleading categories outlined above. It includes conclusory and vague facts and does not designate any distinct cause of action. The City has attempted to untangle Cid's convoluted Complaint and separate it into claims for national origin discrimination and retaliation, but "[w]ith these deficiencies, there is no doubt that no defendant to this action (let alone the Court) c[an] reasonably know what [the Plaintiff] intend[s] to allege." *Tavantzis v. Am. Choppers*, No. 14-1519, 2015 WL 6736753, at *3 (M.D. Fla. Nov. 4, 2015). For these reasons alone, the Complaint shall be dismissed with an instruction to Cid to amend.

### B.   *Substantive Deficiencies*

With that said, there are several deficiencies the Court addresses with an eye toward preserving future judicial time and resources, in the event the Court is called upon to rule on a second motion to dismiss.

#### 1.   **Intentional Discrimination**

First, to the extent Cid brings a claim for intentional discrimination based on national origin, to state a *prima facie* case for disparate treatment under Title VII,[1] a plaintiff must plausibly allege that "(1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class

---

[1] Cid's claims, whether brought under Title VII, Section 1981, or the FCRA, invoke the same analytical framework. *See Bryant v. Jones*, 575 F.3d 1281, 1296 (11th Cir. 2009) (Title VII and Section 1981 claims employ identical analyses); *Albra v. Advan, Inc.*, 490 F.3d 826, 834 (11th Cir. 2007) (FCRA is construed in accordance with Title VII).

5

more favorably than she was treated; and (4) she was qualified to do the job." *Burke-Fowler v. Orange Cty.*, 447 F.3d 1319, 1323 (11th Cir. 2006). A plaintiff need not satisfy the *McDonnell Douglas* burden-shifting framework at the pleading stage, but the "ordinary rules for assessing the sufficiency of a complaint [still] apply." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002), *overruled on other grounds by Twombly*, 550 U.S. 544. To make a comparison of a plaintiff's treatment to that of an employee outside the protected class, the plaintiff must show that she and the other employee are similarly situated "in all relevant respects." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004). In determining whether employees are, in fact, similarly situated, "it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Silvera v. Orange Cty. Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001) (citation and internal quotation marks omitted).

Cid has failed to sufficiently plead these allegations. Assuming *arguendo* that Julie Richards is the individual to whom Cid intends to compare herself in asserting this claim, she has not alleged how the two are similarly situated in any respect whatsoever.

### 2. Retaliation

Second, to the extent Cid brings a claim for retaliation, to state such a claim under Title VII, a plaintiff must plausibly allege that (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *See Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008). To meet the first requirement, Cid must allege both that she "had a good faith, reasonable belief that her employer was engaged in unlawful employment practices," and also that her belief was "***objectively*** reasonable in light of the facts and record presented." *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960-61 (11th Cir. 1997). Cid has failed to allege either of these elements sufficiently to withstand *Twombly*/*Iqbal* scrutiny.

Even if Cid **had** met the first requirement, in order to meet the third requirement, she must allege that the decisionmaker was aware of the protected conduct and that the protected activity and adverse action are not wholly unrelated. See *McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008). Assuming *arguendo* that Cid's meeting with Human Resources qualifies as statutorily protected activity, Cid has still failed to identify the decisionmaker who terminated her and has failed to allege whether he or she knew of Cid's meeting with Human Resources or of her alleged complaints of discrimination at the time he or she decided to terminate Cid's employment.

## IV.  CONCLUSION

Based on the foregoing analysis, it is **ORDERED AND ADJUDGED** that Defendant City of Miramar's Motion to Dismiss [ECF No. 11] is **GRANTED**. The Complaint [ECF No. 1] is **DISMISSED WITHOUT PREJUDICE**.

The Plaintiff **SHALL FILE** an Amended Complaint no later than **August 29, 2016**. If she fails to do so, the Court will dismiss her Complaint *with prejudice* and close the case.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 12th day of August, 2016.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE